**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION**

| | |
|---|---|
| UNITED STATES,<br><br>            Plaintiff,<br><br>    v.<br><br>GREGORY ALLEN BONNER,<br><br>            Defendant. | No.  CR 08-00389 SBA<br><br>**ORDER**<br><br>[Docket No. 6] |

Before the Court is defendant's Motion to Dismiss the Indictment (the "Motion") [Docket No. 6], the Government's Memorandum in Opposition (the "Opposition") [Docket No. 7], and defendant's Reply to Response (the "Reply") [Docket No. 8]. Defendant seeks a dismissal of his indictment for a violation of 18 U.S.C. § 931 on the basis that the charging statute unconstitutionally burdens his individual Second Amendment right to keep and bear arms. After reading and considering the papers presented, and for the reasons stated in this order, the Court DENIES the Motion.

**FACTUAL BACKGROUND**

The following facts are taken from the redacted Richmond Police Report, attached to Defendant's Motion as Exhibit A. The Defendant requests the Court accept as true, for the limited purpose of his Motion to Dismiss, the facts taken from the police report.

On December 8, 2007, at approximately 8:45 p.m., the Richmond police stopped Mr. Bonner's van for a driving with only his parking lights, in violation of the California Vehicle Code, section 24800. [Def.'s Motion, Ex. A, redacted Richmond Police Report]. There were two men in the car and Mr. Bonner was the driver. The police ran a records check which revealed that Bonner was on federal probation for a gun charge. Bonner was asked to exit the vehicle. The reporting officer, T.A. Kaiser, noticed Bonner was wearing a ballistic vest. The accompanying officer, A. Cantrell, told Officer Kaiser that Bonner was a violent felon with gun convictions. Bonner was arrested and taken to the El Cerrito Jail. [Id.]

At the jail, Officer Cantrell ran Bonner's criminal history which revealed a 1991 conviction for two counts of "245(a)(s)-PC" and a 1993 "gun conviction." Bonner was cited and released. [Id.]

Bonner alleges his only reason for wearing a ballistic vest on December 8, 2007, was defensive. In support of his contention, Bonner states the following: (1) his cousin, Demonte Tinsley, had been killed in Central Richmond; (2) people knew Bonner was Tinsley's cousin and Tinsley's killers may have viewed him as someone who would seek to avenge Tinsley's death; (3) Bonner had been shot in 1994 in the same neighborhood he was driving in on the night of his arrest; (4) Bonner had been wounded in 2000 in a drive-by shooting; and (5) Bonner suffered physical trauma from prior shooting incidents and did not want to risk the chance of being shot again without some form of protection. [Docket No. 9, Def.'s Declaration ¶¶ 3-5]. This subset of facts is relevant to the motion because Bonner challenges Section 931 as unconstitutional "as applied" to the specific facts on the day of his arrest.

**PROCEDURAL BACKGROUND**

On June 11, 2008, the Government indicted Bonner for violating 18 U.S.C. §931. [Docket No. 1, Indictment]. Section 931 of Title 18 of the United States Code prohibits violent felons from purchasing, owning, or possessing body armor. The statute provides, in pertinent part, the following:

> (a) In General.— Except as provided in subsection (b), it shall be unlawful for a person *to purchase, own, or possess body armor*, if that person has been *convicted of a felony* that is—
> (1) a *crime of violence* (as defined in section 16); or
> (2) an offense under State law that would constitute a crime of violence under paragraph (1) if it occurred within the special maritime and territorial jurisdiction of the United States.

The indictment recites that Bonner, "having previously been convicted of a felony crime of violence and of a felony offense under state law if it occurred within the special maritime and territorial jurisdiction of the United States, did knowingly possess body armor, described as a Second Chance K-30 trauma plate . . . in violation of Title 18, United States Code, Section 931." [Docket No. 1]. The parties do not dispute in this motion that Defendant was convicted of a felony which constitutes a crime of violence for the purpose of the statute..

Two weeks after Bonner was indicted, on June 26, 2008, the United States Supreme Court

decided the case of *District of Columbia v. Heller*, 128 S.Ct. 2783 (2008). In *Heller*, the Supreme Court determined that three District of Columbia statutes banning the possession of handguns in the home, and requiring lawful firearms kept in the home to be rendered inoperable, violated the Second Amendment of the United States Constitution. In rejecting the D.C. ban on firearm possession, the Court held that the Second Amendment confers upon individuals the right to keep firearms at home for self-protection.

Bonner moves the Court to dismiss the indictment under Section 931 because his use of body armor in the present case was entirely defensive and the charge against him infringes his guaranteed Second Amendment right to defend himself with arms. The foundation for Bonner's request to dismiss the indictment is the Supreme Court's ruling in *District of Columbia v. Heller*, 128 S.Ct. 2783 (2008).

**LEGAL STANDARDS**

**A.  The Second Amendment**

The Second Amendment states:

> "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

**B. An "as applied" challenge.**

Bonner's challenge is specifically limited to his use of body armor as a purely defensive gesture. [Def's Reply, p. 2]. "When faced with a claim that application of a statute renders it unconstitutional, a court must analyze the statute as applied to the particular case. An 'as applied' challenge to the constitutionality of a statute is evaluated considering how it operates in practice against the particular litigant and under the facts of the instant case, not hypothetical facts in other situations." *See* 16 C.J.S. Const. Law §187 (2008).

**C. The *Heller* standard of review.**

The *Heller* majority found the D.C. weapons ban unconstitutional without announcing which level of scrutiny – rational basis, intermediate or strict scrutiny – is required for evaluating Second Amendment restrictions. Justice Scalia rejects Justice Breyer's "interest-balancing inquiry" and states:

3

> "But since this case represents this Court's first in-depth examination of the Second Amendment, one should not expect it to clarify the entire field, any more than *Reynolds v. United States*, 98 U.S. 145, 25 L.Ed. 244 (1879), our first in-depth Free Exercise Clause case, left that area in a state of utter certainty. And there will be time enough to expound upon the historical justifications for the exceptions we have mentioned if and when those exceptions come before us."

128 S.Ct. at 2821.

## DISCUSSION

**A.  The *Heller* decision.**

### 1.  The Facts and the D.C. Statutes

Mr. Heller was a special police officer, authorized to carry a weapon, who applied for a license to keep the weapon in his home and was denied on the basis of several local statutes. Mr. Heller sued to enjoin the city from enforcing the statutes. <u>Heller</u>, 128 Ct. at 2788. The local statutes made the following conduct a crime:

> "It is a crime to carry an unregistered firearm, and the registration of handguns is prohibited. [ . . . ]  Wholly apart from that prohibition, no person may carry a handgun without a license, but the chief of police may issue licenses for 1-year periods. [ . . . ] District of Columbia law also requires residents to keep their lawfully owned firearms, such as registered long guns, "unloaded and dissembled or bound by a trigger lock or similar device" unless they are located in a place of business or are being used for lawful recreational activities.

128 S.Ct. at 2788 (internal citations omitted).

Mr. Heller challenged the constitutionality of the D.C. statutes on the basis that they violated his individual right to bear arms under the Second Amendment.

### 2.  The Holding

A majority of the Court held "that the District's ban on handgun possession *in the home* violates the Second Amendment, as does its prohibition against rendering any *lawful firearm in the home operable* for the *purpose of immediate self-defense*. Assuming that Heller is not *disqualified* from the exercise of Second Amendment rights, the District must permit him to register his handgun and must issue him a license to carry it in the home."  128 S.Ct. at 2821- 2822. [emphasis added].

In determining that the Second Amendment guarantees an individual, rather than a collective, right to bear arms,  the *Heller* majority acknowledges that the exercise of this right is not unlimited.

> There seems to us no doubt, on the basis of both text and history, that the

> Second Amendment conferred an individual right to keep and bear arms. Of course the right was not unlimited, just as the First Amendment's right of free speech was not. Thus, we do not read the Second Amendment to protect the right of citizens to carry arms for any sort of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for any purpose.

128 S.Ct. at 2791.

### 3. *Heller*'s reference to Prohibitions on the Possession of Firearms by Felons.

The *Heller* Court specifically acknowledged restrictions on a felon's right to bear arms and states as follows:

> "Although we do not undertake an exhaustive historical analysis today of the full scope of the Second Amendment, *nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons* and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms."

*Id.* at 2817.

**B.  *Heller* does not apply to the Defendant.**

*Heller* clearly stands for the general proposition that the Second Amendment right to bear arms is an individual right rather than a collective right. *Heller* also expressly permits the possession of firearms in the home, by persons not "disqualified" from the exercise of Second Amendment rights. In arriving at this conclusion, the Supreme Court expressly circumscribes its decision to avoid casting "doubt" on laws forbidding felons from possessing firearms. *Id*.

Bonner asks this Court to regard the above statement as mere dicta and to accept that what the *Heller* majority "expected is that even restrictions on felons, the mentally ill, etc. would be tested in the crucible of its central holding and not merely dispensed with summarily." [Reply, p. 6]. Even were this Court to accept the defendant's position that the Court's statement about restrictions on felons is mere dicta, there is nothing in the *Heller* opinion that would lead to a finding by this Court that an individual's right to bear arms in the home is so expansive that it relieves felons of the penalties associated with their conviction for crimes of violence such as applies to Mr. Bonner under the circumstances of his arrest.

The *Heller* holding does not apply to Bonner. Unlike Mr. Heller, Bonner *is* a restricted person. Section 931 applies to him and Bonner never argues that it does not. Bonner instead asks

this Court to disregard his status as a felon because the Second Amendment, as interpreted by *Heller*, applies to all people and does not draw distinctions when people have "lawful purposes" for bearing arms. According to Bonner, under *Heller*, it is *always* a "lawful purpose" to bear arms for self-defense and because Section 931 does not take this into account, it is unconstitutional as applied to him on the day of his arrest.[1] Yet if it were always lawful to wear body armor purely for self-protection, despite being a convicted felon, then it follows that *Heller* invalidates laws prohibiting felons from possessing firearms, which the *Heller* majority expressly disclaims..

In addition, *Heller* does not stand for the proposition suggested by Bonner that constitutional rights are unconditional. Historically, felons have not had an unconditional or unlimited right to bear arms.[2] [Opposition, p. 6] Bonner states that "felons retain their rights under the First, Fourth and Ninth amendments regardless of their conviction status." [Reply p. 5]. The Government notes, however that "several civic rights have historically been forfeited by felons, and the constitutionality of that forfeiture is settled. [Opposition, p. 6]. For example, felons lose the right to vote in many states, to hold public office, and are typically prohibited from jury service. [Id.]

**C. Post-*Heller* decisions have upheld statutory limitations on convicted felons.**

Other courts, after *Heller,* have rejected Bonner's proposed expansion of the *Heller* holding to permit the possession of firearms or body armor by felons. [Opposition, p. 3]. *See e.g.*, *United States v. Gilbert,* No. 07-30153, 2008 U.S. App. LEXIS 15209 at *4-5 (9th Cir. July 15, 2008) (noting that the possession of machine guns and short-barreled rifles and possession of firearms by felons are all still prohibited post-*Heller*); *U.S. v. Harden*, No. 06-79-KI, 2008 LEXIS 54717 at *1-2 (D. Or. July

---

[1] Bonner qualifies this by suggesting that had he been wearing a bulletproof vest while carrying out a robbery or other violent crime, then he might lose the protection of *Heller* because he would not be engaged in a lawful purpose. [Reply p. 3].

[2] According to two law review articles cited by the Government, "[a]ll the ratifying convention proposals which most explicitly detailed the recommended right-to-arms amendment excluded criminals and the violent," and "colonial and English societies of the eighteenth century, as well as their modern counterparts, have excluded infants, idiots, lunatics and felons [from possessing firearms.]" [Opposition, p. 6].

16, 2008) (upholding prohibition on possession by felons).[3]  Additionally, the Government notes that all cases dealing with §922 since *Heller* have upheld the ban on weapons for felons.  In fact, *United States v. White*, a §922 post-*Heller* case alleging a Second Amendment violation, states that "no court has, even under an individual rights interpretation of the Second Amendment, found 18 U.S.C. §922(g) constitutionally suspect." *United States v. White,* 2008 WL 3211298 (S.D. Ala.)(citing *United States v. Walters*, 2008 WL 2740398 (D.V.I.)).

Even though Bonner argues that "the Government misses the mark by repeatedly citing to cases which analyze challenges to offensive weapon bans" and that § 931 is a statute that bans a "purely defensive" weapon. [Reply at p. 3], he admits there are no reported cases that support his position. [Id. 4].

## CONCLUSION

For the reasons discussed above, the Court DENIES Defendant's Motion to Dismiss the Indictment.


IT IS SO ORDERED.


September 23, 2008         *Saundra B Armstrong*
                            Saundra Brown Armstrong
                            United States District Judge

---

[3]The Goverment cites nine other reported cases, all similarly upholding prohibitions on possession of weapons by persons convicted of misdemeanor crimes of violence, domestic violence, and felons in general, in district courts in Wisconsin, Texas, Georgia, Maine, Michigan, Alabama, West Virginia. [Opposition, p. 3, fn. 1].

7